IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | CIVIL NO. 09-00345 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| ARTHUR THOMPSON; and DENISE | ) | |
| THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        This is a diversity action involving insurance

coverage.  Thomas and Janet Davis have sued Arthur and Denise

Thompson, Defendants here, in state court, alleging that the

Thompsons failed to disclose certain problems in a Kihei, Maui,

house the Thompsons sold to the Davises.  The Thompsons tendered

the Davises' claims to their insurance carrier, RLI Insurance

Company, which filed this Declaratory Judgment Act action.

Pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201(a), RLI

seeks a declaration that it has no duty to defend and/or

indemnify the Thompsons with respect to the Davises' state-court

claims.

        RLI moves now for summary judgment, arguing that the

Davises' claims do not fall within what the insurance policy

covers and that the policy's exclusions bar such coverage.  RLI

also argues that the alleged harm occurred after the policy had

expired.  Because the Davises' negligence and negligent

infliction of emotional distress claims are at least potentially

covered by the policy, the court concludes that RLI currently has

a duty to defend the Thompsons, and, if the Davises prevail on

those claims, to indemnify the Thompsons.

II.     SUMMARY JUDGMENT STANDARD.

        Summary judgment shall be granted when "the pleadings,

the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of

summary judgment is to identify and dispose of factually

unsupported claims and defenses.  Celotex Corp. v. Catrett, 477

U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible

evidence may be considered in deciding a motion for summary

judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975,

988 (9th Cir. 2006).  Summary judgment must be granted against a

party that fails to demonstrate facts to establish what will be

an essential element at trial.  See Celotex, 477 U.S. at 323.  A

moving party has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102

(9th Cir. 2000).  The burden initially falls on the moving party

to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03. On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987. This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine

3

dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

III.    <u>BACKGROUND.</u>

This case arises out of the sale of property by the Thompsons to the Davises.  In a First Amended Verified Complaint filed by the Davises in state court on October 2, 2008, the Davises allege that the Thompsons failed to fully disclose problems with the property, including problems with termite damage, dry rot, and other structural damage.  <u>See</u> First Amended Verified Complaint, Civ. No. 08-1-0490 (1) (Oct. 2, 2010) (attached as Ex. D to RLI's Concise Statement, Docket No. 23-6).

The state-court complaint alleges that, on or about March 25, 2005, Terminix, a pest-control company, inspected the house for termites.  <u>Id.</u> ¶ 13.  Teminix's report indicated that there was "active dry wood" in multiple locations.  <u>Id.</u> ¶ 14. The complaint alleges that the Thompsons fumigated their house in

4

April 2005.  Id. ¶ 15.  The Thompsons allegedly hired Buddy L &
Sons Construction, Inc., to "re-side over the damaged wood, re-
roof the house to replace roof shingles and to replace the
underlayment," allegedly telling the construction company not to
repair or remove the termite damage, but instead to merely cover
it.  Id. ¶¶ 16-19.  The Thompsons dispute this allegation,
stating that they directed the contractor to make "necessary
repairs."  See Declaration of Denise Thompson ¶¶ 4,5 (Mar. 18,
2010).

　　　　The state-court complaint further alleges that, after
covering up the damage, the Thompsons had the house reinspected
by Terminix in December 2005.  See First Amended Verified
Complaint ¶ 20.  The reinspection report stated that there was no
sign of live termite activity.  Id. ¶ 21.  The Thompsons
allegedly disclosed this second report, but not the earlier
report, to the Davises.  Id. ¶ 36.  The Davises asked the
Thompsons for permission to remove some of Buddy L's work to
inspect the material underneath, but permission was denied.  Id.
¶¶ 38-46.

　　　　In the state-court action, the Davises have asserted
claims of fraud (First Cause of Action), breach of contract
(Second Cause of Action), negligence (Third Cause of Action), and
intentional and negligent infliction of emotional distress
(Fourth and Fifth Causes of Action).  See id.

The Thompsons tendered the defense of the Davises'
state-court suit to RLI, their insurance carrier, asserting
insurance coverage under an endorsement to their Dwelling Fire
Policy, No. DFP0011606, for the policy period that was supposed
to run from May 2, 2006, to May 2, 2007 ("Policy").  The
endorsement covered premises liability and medical payment to
others.

The Policy provides $500,000 per occurrence for
premises liability:

> If a claim is made or a suit is brought
> against any "insured" for damages because of
> "bodily injury" or "property damage" to which
> this coverage applies and which arises from
> the ownership, maintenance, or use of the
> "insured location", within the policy period,
> we will:
>
> 1.    Pay up to our limit of liability for the
>       damages for which the "insured" is
>       legally liable.  Damages include
>       prejudgment interest awarded against the
>       "insured."
>
> 2.    Provide a defense at our expense by
>       counsel of our choice.  We may make any
>       investigation and settle any claim or
>       suit that we decide is appropriate.  Our
>       obligation to defend any claim or suit
>       ends when the amount we pay for damages
>       resulting from the occurrence equals our
>       limit of liability.

Premises Liability and Medical Payments to Others Coverage
Endorsement (attached as Ex. A to RLI's Concise Statement, Docket
No. 23-2).

6

The Policy defines "bodily injury" as "physical harm, sickness or disease, including required care, loss of services and death resulting therefrom." <u>Id.</u>  It defines "property damage" as "physical injury to or destruction of tangible property, including loss of use of this property." <u>Id.</u>  It further defines "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions, that results in 'Bodily Injury' or 'Property Damage.'" <u>Id.</u>

The Policy has an exclusion for "bodily injury" or "property damage" that "is expected or intended by the 'insured.'" <u>Id.</u>  It also has exclusions for "'Property damage' to property owned by the 'insured'" and "'Property damage' to property rented to, occupied or used by or in the care of the 'insured.'" <u>Id.</u>

On or about October 3, 2006, Denise Thompson wrote to RLI to ask that the Policy be cancelled effective August 28, 2006, the date the property was sold and the sale closed. <u>See</u> Letter from Denise Thompson to Elko Nutt, Web Insurance Agency (Oct. 3, 2006) (attached as Ex. B to RLI's Concise Statement, Docket No. 23-4).  On or about October 27, 2006, RLI acknowledged the cancellation, backdating the effective date of the cancellation to August 28, 2006. <u>See</u> Cancellation Acknowledgment (Oct. 27, 2006) (attached as Ex. A to RLI's Concise Statement,

Docket No. 23-3).  RLI sent the Thompsons a check reimbursing them for the prorated premium paid for the period beyond the cancellation date.  The Warranty Deed transferring title to the property from the Thompsons to the Davises was not recorded until August 30, 2008.  <u>See</u> Warranty Deed (attached as Ex. C to RLI's Concise Statement, Docket No. 23-5).

In the present action, RLI, which is not a party to the state-court action, asks this court to determine whether it must defend and/or indemnify the Thompsons with respect to the Davises' claims.  <u>See</u> Complaint for Declaratory and Related Relief (Docket No. 1).

IV.      <u>ANALYSIS.</u>

A.   <u>General Law Governing Insurance Contracts.</u>

Federal courts sitting in diversity apply state substantive law and federal procedural law.  <u>See</u> <u>Snead v. Metro. Prop. & Cas. Ins. Co.</u>, 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  <u>Ariz. Elec. Power Coop. v. Berkeley</u>, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  <u>Id.</u>; <u>see also</u> <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d

940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994). Hawaii law requires that an insurance policy be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); see also Haw. Rev. Stat. § 431:10-237 (Michie 2004) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguity must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson. Dawes, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy. See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994)

(as amended on grant of reconsideration).  The insurer has the burden of establishing the applicability of an exclusion.  <u>See id.</u> at 297, 875 P.2d at 914.

The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." <u>Dairy Road Partners v. Island Ins.</u>, 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage.  <u>Sentinel</u>, 76 Haw. at 287, 875 P.2d at 904.  However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend.  <u>Pancakes of Haw. v. Pomare Props.</u>, 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  In other words, for RLI to obtain summary judgment on its duty to defend, it must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the Policy.  <u>See Tri-S Corp. v. W. World Ins. Co.</u>, 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

"Hawaii adheres to the 'complaint allegation rule.'" <u>Burlington Ins. Co.</u>, 383 F.3d at 944 (citing <u>Pancakes of Hawaii, Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App. 1997)).  Under that rule,

> The focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for

> coverage of the insurance contract.  'Where
> pleadings fail to allege any basis for
> recovery within the coverage clause, the
> insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v.

Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230)).

      B.   RLI's Duty to Defend or Indemnify.

         1.   RLI Has Not Demonstrated a Lack of Coverage
            Based on the Policy Period.

The original Policy period ran from May 2, 2006, to May

2, 2007.  Several months after the property was sold, in October

2006, Denise Thompson wrote to RLI, asking that the Policy be

cancelled as of the date the property was sold.  Thompson

identified the sale date as August 28, 2006.  See Letter from

Denise Thompson to Elko Nutt, Web Insurance Agency (Oct. 3, 2006)

(attached as Ex. B to RLI's Concise Statement, Docket No. 23-4).

On or about October 27, 2006, RLI cancelled the Policy effective

August 28, 2006.  See Cancellation Acknowledgment (Oct. 27, 2006)

(attached as Ex. A to RLI's Concise Statement, Docket No. 23-3).

The Warranty Deed transferring title to the property from the

Thompsons to the Davises was not recorded until August 30, 2008.

See Warranty Deed (attached as Ex. C to RLI's Concise Statement,

Docket No. 23-5).  RLI argues that any harm the Davises suffered

occurred when they became the owners of record on August 30,

2008, after the Policy period had ended.  On this motion for

11

summary judgment, this court is not convinced that RLI is entitled to prevail on this issue.

The court construes the state-court complaint as possibly alleging accidental conduct occurring during the Policy period.  For example, the state-court complaint alleges that the Thompsons failed to repair dry rot, a condition that could possibly get worse over time.  To the extent the Davises allege that the Thompsons negligently repaired or supervised their construction company, thereby allowing existing dry rot to be exacerbated by the construction company's failure to repair existing damage, the Davises may be alleging "an accident" that resulted in "property damage" arising out of the ownership of the "insured location" while the Policy was in effect.  The court agrees with RLI that the underlying state-court complaint does not clearly allege exacerbation of damage.  However, because exacerbation of damage cannot easily be read out of the complaint either, and because the factual allegations in the underlying complaint must be read in the light most favorable to the Thompsons, the court reads those factual allegations as possibly alleging exacerbation of damage.  In other words, the complaint allegation rule does not entitle RLI to judgment as a matter of law.

The court is unconvinced by RLI's argument that the Policy covers only damages occurring during the Policy period.

At the hearing on the present motion, RLI characterized the Policy as an "occurrence policy."  RLI then argued that, under the Hawaii Supreme Court's Sentinel decision, "occurrence policies" provide coverage only for harm that is suffered during a policy period.  In Sentinel, the policy covered "property damage . . . caused by an 'occurrence.'"  "Occurrence" was defined as "an accident . . . which results in . . . property damage."  "Property damage" was defined as "physical injury to or destruction of tangible property which occurs during the policy period."  Sentinel, 76 Haw. at 287, 875 P.2d at 904.  Guided by these definitions, the Hawaii Supreme Court noted that an "'occurrence policy' provides coverage if the event insured against (the 'occurrence') takes place during the policy period, irrespective of when a claim is presented."  Sentinel, 76 Haw. at 288, 875 P.2d at 905.

RLI's reliance on Sentinel is misplaced, as RLI is ignoring the language of the policy at issue here.  Unlike the policy in Sentinel, the Policy before this court does not limit coverage to "physical injury to or destruction of tangible property which occurs during the policy period."  Instead, the Policy provides insurance coverage "If a claim is made or a suit is brought against any 'insured' for damages because of 'bodily injury' or 'property damage' to which this coverage applies and which arises from the ownership, maintenance, or use of the 'insured location', within the policy period . . . ."  Premises

13

Liability and Medical Payments to Others Coverage Endorsement (attached as Ex. A to RLI's Concise Statement, Docket No. 23-2). Liberally construing this language in favor of the Thompsons and resolving any ambiguity against RLI, the court rules that the "within the policy period" limitation can be said to modify "ownership, maintenance, or use of the 'insured location.'" Under that interpretation, coverage exists if the Davises' claims arise out of the Thompsons' "ownership, maintenance, or use of" their property during the Policy period, regardless of when the "property damage" occurred or a "claim" was made. See Dawes, 77 Haw. at 131, 883 P.2d at 42.

The court is also unconvinced by RLI's argument that, under Hawaii law, the court must always examine the policy in effect at the time of the damage. At the hearing, RLI focused on state-court litigation concerning the Kaloko Dam. RLI says that, in litigation concerning property damage and multiple deaths caused when the dam broke, the state court found coverage under the insurance policies in effect at the time the dam broke, rather than under the policies in effect years earlier at the time of any alleged negligence that may have led to the break. RLI provided no evidence of those policies, and the state-court decisions are not readily available. Even if RLI's description of the Kaloko Dam litigation is accurate, it appears the state court was faced with determining which of several insurance

14

policies applied.  RLI appears to be saying that the state court determined that it was better to apply a newer policy in effect at the time of the damage than a policy from decades earlier. RLI did not say whether the dollar limits on the policies affected the decision.  In either case, the state court apparently found that there was at least potential coverage for the damage.  Here, however, there is only one policy, and there is no evidence establishing that the Thompsons should not have reasonably expected the Davises' claims to fall within the Policy period.  To hold otherwise would be tantamount to a refusal to construe the Policy in accordance with the reasonable expectations of a layperson.  See Dawes, 77 Haw. at 131, 883 P.2d at 42.

The court's concern is clarified with a hypothetical. Suppose a careless person bumps into a harp, causing it to fall over and break.  Suppose further that the harpist sues the careless person, who has a one-year insurance policy, in effect at the time of the accident, covering liability for accidental conduct that causes property damage or bodily injury.  The harpist would clearly be entitled to insurance coverage for the destruction of the harp (property damage).  But suppose that, after the one-year policy period, the harpist, playing a new harp, performs in a concert and determines that the new harp is not as responsive to her playing as the old one.  Panned by

15

reviewers, the harpist suffers severe emotional distress accompanied by physical manifestations of that stress (e.g., hives, loss of hair, weight loss, headaches).  Under RLI's argument, any insurance benefits for the harpist's "bodily injury" would be time-barred.  This makes no sense.  Absent clear policy language requiring any covered injury to fall within the policy period, a layperson would rightly expect the subsequent "bodily injury," assuming proof of a causal connection to the accident, to be covered by the same policy that covered the original accident.

Similarly, the Thompsons rightly expect that the ambiguous time limitation here does not exclude coverage.  That limitation could be read as applying to the period of the Thompsons' "ownership, maintenance, or use of" property, not to when damage or injury was sustained.  See Dawes, 77 Haw. at 131, 883 P.2d at 42.

2.    There is No Duty to Defend or Indemnify With Respect to the Fraud Claim.

In the First Cause of Action asserted in the state court complaint, the Davises claim that the Thompsons committed fraud by knowingly telling the Davises that all termite, dry rot, and other damage to the house had been repaired to induce the Davises to purchase the house.  See First Amended Verified Complaint ¶¶ 67-74.  The Davises' fraud claim does not trigger insurance coverage under the Policy because it involves neither

16

an "occurrence," which the Policy defines as "an accident," nor "property damage" or "bodily injury."  See Hawaiian Holiday, 76 Haw. at 171, 872 P.2d at 235.

In Hawaiian Holiday, the insured had a comprehensive general liability policy that provided insurance coverage for an "occurrence," which the policy defined as an accident.  See id. at 168, 872 P.2d at 232.  The insured, a macadamia nut company, was sued by two limited partnerships in connection with a business venture to cultivate and harvest macadamia nuts, alfalfa, and tropical hay.  The limited partnerships asserted claims against the nut company for fraud, racketeering, breach of contract, fraudulent conveyance, and misappropriation of assets. Although the limited partnerships claimed "property damage" flowing from the nut company's alleged killing of tree seedlings, the Hawaii Supreme Court ruled that the insurer had no duty to defend or indemnify with respect to the claims because the alleged conduct was part and parcel of the breach of contract and fraud claims, neither of which involved accidental conduct.  See id. at 171, 872 P.2d at 235.

Here, the intentional act exclusion in the Policy similarly bars coverage for the Thompson's alleged fraud. Accordingly, no duty to defend or indemnify arises out of the Davises' fraud claim.

RLI also cites Safeco Insurance Company of America v. Andrews, 915 F.2d 500, 502 (9th Cir. 1990), for the proposition that a property seller who misrepresents the value of the property does not cause "damage to tangible property, but rather . . . economic loss resulting from [the seller's] alleged failure to discover and disclose facts relevant to the property's value and desirability." RLI therefore argues that, quite apart from not involving an "occurrence," the Thompsons' alleged fraudulent conduct could not have caused "property damage." As discussed below, however, it is unclear whether the Davises are asserting that the Thompsons' conduct exacerbated existing property damage. If the Thompsons' conduct caused even more property damage, the Safeco analysis on this point might be inapplicable. With respect to the fraud claim, this court declines to decide this issue, as the fraud claim clearly falls outside the scope of the Policy's coverage on the other ground discussed above.

　　　3.　　There is No Duty to Defend or Indemnify With Respect to the Breach of Contract Claim.

The Second Cause of Action asserted in the state-court complaint claims a breach of contract regarding the sale of the house. See First Amended Verified Complaint ¶ 80. Because the alleged breach of contract does not involve an accident resulting in "property damage" or "bodily injury," the breach of contract claim does not trigger a duty to defend or indemnify. As discussed above, the Hawaii Supreme Court has made clear that

intentional breach of contract claims do not involve accidental conduct triggering insurance coverage under insurance policies providing insurance for accidents.  See Hawaiian Holiday, 76 Haw. at 171, 872 P.2d at 235.  Accordingly, to the extent the Davises assert an intentional breach of contract claim, RLI owes no duty to defend or indemnify the Thompsons under the Policy.

Whether RLI has a duty to defend and indemnify with respect to a negligent breach of contract claim has not been decided by the Hawaii Supreme Court.  See Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 946 (9th Cir. 2004) ("We note at the outset that the Hawaii Supreme Court has not resolved whether a claim for a negligent breach of contract can constitute an occurrence under a CGL policy.").  This court, in keeping with the Ninth Circuit's Burlington decision, concludes that RLI has no duty to defend or indemnify the Thompsons with respect to a negligent breach of contract claim.

In Burlington, the Ninth Circuit, applying Hawaii law, considered the definition of "accident" set forth in Hawaiian Holiday and concluded that Burlington Insurance Company owed no duty to defend Oceanic Design and Construction, Inc., against contract and contract-related tort claims.  Oceanic was a named insured under a commercial general liability insurance policy issued by Burlington and had contracted to build a single-family residence for certain homeowners.  Id. at 943.  After

19

construction was completed, the homeowners refused to pay Oceanic because they were not satisfied with the work. Id. Oceanic sued the homeowners in Hawaii state court, alleging that they had breached the contract by failing to pay for the construction. Id. The homeowners filed a counterclaim against Oceanic, asserting claims for, among other things, negligent breach of contract. Id. Burlington agreed to defend Oceanic subject to a reservation of rights and filed a federal coverage action seeking a declaration that it owed no duty to defend or indemnify Oceanic. Id. The district court granted summary judgment in favor of Burlington, concluding that the homeowners' claims against Oceanic were not covered by the insurance policy. Id. at 944. Oceanic appealed. Id.

On appeal, the Ninth Circuit noted that the insurance policy "cover[ed] claims for liability for 'bodily injury' or 'property damage' if 'caused by an occurrence'" and that the policy "defined 'occurrence' as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" Id. at 943, 945. Applying the Hawaii Supreme Court's definition of "accident," the Ninth Circuit concluded that the homeowners' claim for negligent breach of contract was not covered by the policy, reasoning:

> In Hawaii, an occurrence "cannot be the
> expected or reasonably foreseeable result of
> the insured's own intentional acts or
> omissions." If Oceanic breached its

> contractual duty by constructing a
> substandard home, then facing a lawsuit for
> that breach is a reasonably foreseeable
> result.

Id. at 948.  The Ninth Circuit also noted that "our holding is
consistent with the line of cases from the District of Hawaii
that hold that contract and contract-based tort claims are not
within the scope of CGL policies under Hawaii law."  Id. at 949
(citing CIM Ins. Corp. v. Midpac Auto Ctr., Inc., 108 F. Supp. 2d
1092 (D. Haw. 2000); CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d
975 (D. Haw. 1999); WDC Venture v. Hartford Accident & Indem.
Co., 938 F. Supp. 671 (D. Haw. 1996)); accord State Farm Fire &
Cas. Co. v. Scott, Civil No. 06-119 SOM/BMK, slip op. at 16-18
(Jan. 24, 2007)).

        If the Thompsons breached the contract by failing to
make proper disclosures, damages flowing from the breach would be
reasonably foreseeable.  Accordingly, the court rules that RLI
has no duty to defend or indemnify the Thompsons with respect to
any negligent breach of contract claim the Davises may be
asserting.

                4.    RLI Does Not Meet Its Burden of Establishing
                      That it Owes No Duty to Defend or Indemnify
                      With Respect to the Negligence Claims.

        In the Third Cause of Action asserted in their First
Amended Verified Complaint, the Davises vaguely assert
negligence, even though the specific factual allegations in the
state-court complaint allege intentional conduct.  Applying the

complaint allegation rule, see Burlington Ins. Co., 383 F.3d at 944, and construing the complaint in the light most favorable to the Thompsons for purposes of this summary judgment motion, the court sees the Davises as possibly claiming negligent failure to disclose damage or possibly negligent repair of the damage.  In either case, the "property damage" that was supposedly fixed could not have been caused by the alleged negligence.  Any alleged failure to disclose did not cause any already existing termite damage, dry rot, or other structural problem.  Similarly, any alleged negligence in repairing the termite damage, dry rot, or other structural problems cannot be said to have caused that damage.  Accordingly, to the extent the underlying complaint asserts "property damage" for any damage that was supposedly (even if insufficiently) fixed, it does not assert a covered claim.

It is unclear, however, whether the underlying complaint is asserting that any negligence exacerbated prior damage.  That is, if the failure to properly fix the earlier damage (e.g., dry rot) caused further property damage (e.g., more extensive dry rot), such a claim could possibly be covered under the Policy, as the alleged negligence might be accidental conduct causing "property damage."  Such negligence would not fall under the "owner/occupant" exclusion, as the harm would have continued after the Thompsons sold the property.  Given the record before

this court, RLI does not establish as a matter of law that it is impossible for the negligence claim in the underlying lawsuit to be covered by the Policy.  Accordingly, based on the current record, RLI does not meet its burden of showing that it has no duty to defend and/or indemnify the Thompsons with respect to the Davises' negligence claim.  See Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

> 5.   RLI Does Not Meet Its Burden of Establishing That it Owes No Duty to Defend or Indemnify With Respect to the Negligent Infliction of Emotional Distress Claim.

The Davises assert claims for intentional and/or negligent infliction of emotional distress.  RLI argues that neither claim triggers a duty to defend or indemnify.  Because RLI has not demonstrated that it would be impossible for the negligent infliction of emotional distress claim to trigger insurance coverage, RLI is not entitled to summary judgment on that claim.

By its very nature, however, an intentional infliction of emotional distress claim does not involve "accidental" conduct covered under the Policy.  It would also be excluded under the Policy's intentional acts exclusion.  Accordingly, the intentional infliction of emotional distress claim does not trigger a duty to defend or indemnify under the Policy.

As discussed above, contract-based tort claims do not trigger insurance coverage.  See Burlington 383 F.3d at 946-48.

To the extent the underlying state court complaint asserts that negligent disclosures caused the Davises emotional distress, those claims are contract-related tort claims not covered under the Policy.  See id.; see also 3139 Properties, LLC v. First Specialty Ins. Corp., 2007 WL 1701922 at *7-*9 (D. Haw., June 8, 2007).

However, to the extent the underlying state-court complaint seeks damages for emotional distress caused by the Thompsons' alleged negligence in fixing rot or other damage, the Davises might be alleging a "bodily injury" caused by accidental conduct.  The endorsement to the Policy defines "bodily injury" as "physical harm, sickness or disease, including required care, loss of services and death resulting therefrom."  Unlike other cases in which this court concluded that emotional distress claims were excluded from coverage based on the policies' specific exclusion of emotional distress damages, see, e.g. State Farm Fire & Cas. Ins. Co. v. Ramirez, 2010 WL 290539 (D. Haw., Jan. 22, 2010), the Policy here does not specifically exclude emotional distress damages.  Citing First Insurance Company of Hawaii, Ltd. v. Lawrence, 77 Haw. 2, 881 P.2d 489 (1994), the Thompsons contend that the alleged stress constitutes a "sickness" or a "disease."  Given the policy language at issue in this case, the Thompsons have a point.

In <u>Lawrence</u>, the Hawaii Supreme Court examined a no-fault insurance policy.  Because that policy did not meet the requirements of Hawaii's No-Fault law, the Court read into it the statutory definition of "accidental harm," which was "bodily injury, death, sickness, or diseases caused by a motor vehicle accident to a person."  <u>Id.</u> at 6, 881 P.2d at 493 (quoting Haw. Rev. Stat. § 294-10(a)(1)).  The Hawaii Supreme Court concluded that "accidental harm" included emotional distress because an average person would think that emotional distress was within "the ambit of 'sickness.'"  <u>Id.</u> at 7, 881 P.2d at 494.  The court examined the common meaning of "sickness" and "disease," noting that "'Sickness' means 'an ailment of such character as to affect *the general soundness of health*'" and that "'Disease' is defined as 'any deranged or depraved condition, as of the mind, society, etc.'"  <u>Id.</u> (quoting <u>Black's Law Dictionary</u> at 1380 (6th ed. 1990) and <u>Webster's Encyclopedic Unabridged Dictionary of the English Language</u> at 411 (1989)).  The Hawaii Supreme Court ruled that emotional distress fell within those definitions to the extent the emotional distress "affects the general soundness of health" or involves a "depraved condition . . . of the mind."  <u>Id.</u>  Given the holding in <u>Lawrence</u>, another judge of this court, Judge David Alan Ezra, has concluded that, under a policy defining "bodily injury" as "physical harm to the body," "bodily injuries include

25

emotional distress."  See <u>Allstate Ins. Co. v. Gadiel</u>, 2008 WL 4830847 (D. Haw., Nov. 7, 2008).

If the Davises' negligent infliction of emotional distress claim concerns a "sickness" or "disease" falling within "bodily injury" as defined in the Policy, RLI has a duty to defend or indemnify the Thompsons.  Of course, this court recognizes that, under Hawaii law, the Davises appear unlikely to recover emotional distress damages in connection with their breach of contract claim.  See <u>Francis v. Lee Enter.</u>, 89 Haw. 234, 240, 971 P.2d 707, 713 (1999) (holding that emotional distress damages are not recoverable for a breach of contract unless accompanied by bodily injury or are particularly foreseeable as a result of the breach).  Nor does it appear likely that the Davises will recover emotional distress damages in tort in connection with alleged property damage, as they do not allege that their emotional distress resulted in physical injury or mental illness to them, as required by Hawaii law.  <u>See</u> Haw. Rev. Stat. § 663-8.9.  As clarified by their answers to interrogatories, the Davises are only claiming that they were "stressed" by having to spend time and money fixing their house. <u>See</u> Answers to Interrogatories Nos. 20 and 24 (attached as Ex. 8 to the Thompsons' Concise Statement).  Nevertheless, to the extent the Davises' complaint asserts a covered claim, RLI has a

duty to defend and indemnify the Thompsons as long as that claim remains in issue.

V.        CONCLUSION.

       As RLI fails to establish that, as a matter of law, there is no state-court claim with respect to which it has a duty to defend or indemnify the Thompsons, RLI's summary judgment motion is denied.

              IT IS SO ORDERED.

              DATED: Honolulu, Hawaii, April 12, 2010.



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              United States District Judge

RLI Insurance Company v. Thompson, et al., CIVIL NO. 09-00345 SOM/BMK; ORDER DENYING MOTION FOR SUMMARY JUDGMENT